**In re Elzie Frank MOORE, Debtor.**

**Elzie Frank MOORE, Appellant,**

**v.**

**C.F., By and Through her next friend, R.F.,[1] Appellee.**

**Civ. A. No. 93–T–147–N.**

United States District Court,
M.D. Alabama, N.D.

Dec. 2, 1993.

1. The court has used the initials of the minor and her mother in order to keep the identity of the minor secret.

William Cater Elliott, Parnell, Crum & Anderson, P.A., Montgomery, AL, for debtor/appellant.

Tom Wright, Montgomery, AL, for appellee.

### MEMORANDUM OPINION

MYRON H. THOMPSON, Chief Judge.

Retired Associate Justice Powell has observed that,

> "Few cases are more difficult to try than one of child abuse where the child is very young and does not testify in court. Moreover, there is rarely a non-party witness to alleged child abuse, with the result that rulings on admissibility of evidence on behalf of the child are particularly sensitive."

*Morgan v. Foretich,* 846 F.2d 941, 951 (4th Cir.1988) (Powell, J., concurring in part and dissenting in part). This is such a case. Appellant Elzie Frank Moore appeals to this court from a final decision of the Bankruptcy Court for the Middle District of Alabama, holding that a state court judgment awarding

damages against him for the sexual abuse of a minor is nondischargeable under 11 U.S.C.A. § 523. Moore bases his appeal on the contention that the bankruptcy court improperly allowed into evidence the minor's out-of-court statements that he had sexually abused her. For the reasons set forth below, the decision of the Bankruptcy Court is affirmed.

## I. BACKGROUND

In September 1991, in response to a civil lawsuit brought by C.F., a minor, the Circuit Court of Montgomery County, Alabama, found that Moore had sexually abused C.F. and entered a default judgment against him for $50,000 in compensatory damages and $150,000 in punitive damages.[2]

Moore later initiated a chapter 7 bankruptcy proceeding pursuant to 11 U.S.C.A. §§ 701, et seq. C.F. responded by filing an adversary proceeding in the bankruptcy court, claiming that the state-court default judgment is nondischargeable.[3] 11 U.S.C.A. § 523(a)(6) provides that a discharge may not be obtained for debts arising from "willful and malicious injury by the debtor."[4] The bankruptcy court conducted a hearing and concluded that Moore had sexually abused C.F. and that the state-court default judgment was therefore nondischargeable.

Moore has now appealed to this court, contending that the bankruptcy court improperly admitted into evidence an out-of-court statement, made by C.F. when she was six years old to her professional counselor, that Moore had inappropriately touched her.[5]

## II. DISCUSSION

### A.

As stated, "there is rarely a non-party witness to alleged child abuse." *Morgan*, 846 F.2d at 951 (Powell, J, concurring in part and dissenting in part). As a result, because small children often lack the maturity to provide evidence in formal and open in-court proceedings, such cases would be difficult, if not impossible to prove, without some reliance on out-of-court statements made by these children in other settings. On the other hand, however, because a person found liable for having sexually abused a child, even if only civilly, is considered especially contemptible in the eyes of the public, courts must be especially sensitive that the civilly accused are shielded from unreliable evidence of their culpability. In other words, before admitting these out-of-court statements by minors, a trial court must have some objective basis to conclude that the statements are reasonably reliable. Although such a basis can often be found in those Federal Rules of Evidence governing the admission of hearsay—that is, Rules 800 to 806—the court must still be "particularly sensitive," *Morgan*, 846 F.2d at 951 (Powell, J, concurring in part and dissenting in part), in the application of these rules.

Here, this difficult task is doubly difficult because, in admitting C.F.'s out-of-court statement naming Moore as her abuser, the bankruptcy court gave no reason for its decision. Moreover, counsel for C.F. provided no legal argument as to why the statement was admissible in a civil case. The bankruptcy court merely announced that Moore's counsel's objection to the statement as hearsay was "overruled" and then admitted into evidence the following testimony from C.F.'s counselor:

> "[C.F.] began talking about ... Mr. Moore ... and about her feelings about Mr. Moore. She liked him a great deal. She expressed to me some concern about some of the things that had been happening on visits when her mother would leave the room. Specifically, she said that Mr. Moore touched her inappropriately."

---

**2.** C.F. brought her state-court action through one of her parents, R.F.

**3.** As with the state-court action, C.F. initiated the bankruptcy adversary proceeding through her parent, R.F.

**4.** Section 523(a)(6) provides that "A discharge ... does not discharge an individual debtor from any debt ... (6) for willful and malicious injury by the debtor to another entity or to the property of another entity."

**5.** C.F. was six years old when she made the out-of-court statement to her counselor; she was five, however, when the abuse allegedly occurred.

Nevertheless, although the lack of an explanation deprives this court of an analytical starting point for determining whether that the bankruptcy court did not err, it is apparent from a full and careful review of the record and the relevant law that the bankruptcy court did not abuse it discretion in admitting C.F.'s out-of-court statement under Rule 803(4) of the Federal Rules of Evidence.[6] The standard of review for this court, acting as an appellate court, is whether the bankruptcy court clearly abused its discretion in its application of Rule 803(4). *U.S. Anchor Mfg., Inc. v. Rule Industries, Inc.*, 7 F.3d 986 (11th Cir.1993) (a trial court's "evidentiary rulings are not disturbed unless there is a clear showing of abuse of discretion"); *see also United States v. DeNoyer*, 811 F.2d 436, 438 (8th Cir.1987) (standard of appellate review is whether trial court clearly abused discretion in admitting child's out-of-court statement under Rule 803(4)); *United States v. Renville*, 779 F.2d 430, 439 (8th Cir.1985) (same).

Rule 803(4) provides that the following statements are not excluded by the hearsay rule and, if relevant, are thus admissible as evidence, even though the declarant is available as a witness:

> "Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."

Rule 803(4) extends to mental health professionals. *See* Fed.R.Evid. 803(4) advisory committee's note (the "statement need not have been made to a physician"); *see also Morgan*, 846 F.2d 941, 949, n. 17 (4th Cir. 1988) (applying the medical treatment exception to comments made to child psychologist); *DeNoyer*, 811 F.2d at 440 (applying the medical treatment exception to comments made to social workers); *United States v. Lechoco*, 542 F.2d 84, 89, n. 6 (D.C.Cir.1976) (extending Rule 803(4) to comments made to psychiatrist).

Two justifications are often given to support Rule 803(4). First, "[t]he declarant's motive provides a sufficient guarantee of trustworthiness to permit an exception to the hearsay rule," *Renville*, 779 F.2d at 436: "a statement made in the course of procuring medical services, where the declarant knows that a false statement may cause misdiagnosis or mistreatment, carries special guarantees of credibility that a trier of fact may not think replicated by courtroom testimony." *White v. Illinois*, —— U.S. ——, ——, 112 S.Ct. 736, 743, 116 L.Ed.2d 848 (1992). Second, "a fact reliable enough to serve as the basis for a diagnosis is also reliable enough to escape hearsay proscription." *United States v. Iron Shell*, 633 F.2d 77, 84 (8th Cir.1980) (quoting 4 J. Weinstein & M. Berger, Weinstein's Evidence s 803(4). [01], at 803–129 (1979)), *cert. denied*, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981). Relying on these two justifications, the Eighth Circuit Court of Appeals has developed a two-part test for the admissibility of hearsay statements under rule 803(4): "first, the declarant's motive in making the statement must be consistent with the purposes of promoting treatment; and second, the content of the statement must be such as is reasonably relied on by a physician in treatment or diagnosis." *Renville*, 779 F.2d at 436. After considering each part of the two-part test in reverse order, this court concludes that C.F. has satisfied the test.

Admittedly, the advisory committee notes to Rule 803(4) provide that "Statements as to fault would not ordinarily qualify" as an exception to hearsay under the rule. The notes give as an example that "a patient's statement that he was struck by an automobile would qualify, but not his statement that the car was driven through a red light." Fed. R.Evid. 803(4) advisory committee notes. Similarly, courts have held that statements as to identity do not ordinarily qualify as an exception. *Iron Shell*, 633 F.2d at 84. As the Eighth Circuit explained in *Renville*,

---

**6.** On appeal, counsel for C.F. advances that the bankruptcy's court decision may supported by Rules 701 through 705 of the Federal Rules of Evidence, which govern the admission of expert testimony. The court need not address whether these rules would permit the admission of C.F.'s out-of-court statement.

"Statements of identity seldom are made to promote effective treatment; the patient has no sincere desire to frankly account for fault because it is generally irrelevant to an anticipated course of treatment. Additionally, physicians rarely have any reason to rely on statements of identity in treating or diagnosing a patient. These statements are simply irrelevant in the calculus in devising a program of effective treatment."

779 F.2d at 436.

■ However, as the Eighth Circuit further recognized, it is only "ordinarily" true that statements of fault and identity do not fall within Rule 803(4)'s hearsay exception for medical diagnosis and treatment. *Renville*, 779 F.2d at 436; *see also* Fed.R.Evid. 803(4) advisory committee notes (statements of fault "not ordinarily admissible"). "Sexual abuse of children at home presents a wholly different situation." *Renville*, 779 F.2d at 437. Statements by a child abuse victim that the abuser is a member or friend of the victim's immediate household are reasonably pertinent to treatment. "Statements of this kind differ from the statements of fault identified by the Rules Advisory Committee … in a crucial way: they are reasonably relied on by a physician in treatment or diagnosis." *Id.* at 436–37. Because "child abuse involves more than physical injury," *id.* at 437, the mental health provider or "physician must be attentive to treating the emotional and psychological injuries which accompany this crime." *Id.* Therefore, "[t]he exact nature and extent of the psychological problems which ensue from child abuse often depend on the identity of the abuser." *Id.* Because this was no less true with regard to the treatment C.F.'s counselor provided to C.F., it was appropriate and necessary that C.F.

reveal to her counselor the identity of her abuser.[7]

■ Statements of identity by a minor receiving treatment for sexual abuse can also meet the first part of the two-part test for admission of out-of-court statements pursuant to Rule 803(4)—that is, "the declarant's motive in making the statement must be consistent with the purposes of promoting treatment." *Renville*, 779 F.2d at 436. If the child is aware that the identity of the abuser is important to diagnosis and treatment, then the child's "motivation to speak truthfully is the same as that which insures reliability when he recounts the chronology of events or details symptoms of somatic distress." *Id.* at 438. It is circumstantially apparent from the record that C.F. was fully aware that her past and present relationship to Moore—and thus her need to identify Moore as her abuser—was very much a part of her treatment. Nothing in the record indicates that C.F.'s motive in identifying Moore as her sexual abuser was other than as a patient responding to a mental health counselor's questioning for prospective treatment.[8] Moreover, although C.F. was only six when she received counseling, it appears from the record that she fully appreciated that she was receiving treatment.[9]

■ In conclusion, the bankruptcy court did not abuse its discretion in admitting into evidence six-year-old C.F.'s out-of-court statement to her professional counselor that Moore had inappropriately touched her. *See, e.g., United States v. George*, 960 F.2d 97, 99–100 (9th Cir.1992) (physician allowed to testify under Rule 803(4) to statements made by twelve-year-old victim); *Foretich*, 846 F.2d at 949–50 (psychologist allowed to testify under Rule 803(4) to statements made by four-year-old victim); *United States v. Shaw*, 824 F.2d 601, 608 (8th Cir.1987) (physician

---

7. Moreover, under Alabama law, mental health providers have an obligation to prevent an abused child from being returned to an environment in which he or she cannot be adequately protected from recurrent abuse; the providers are required to report all reasonable suspicions of child abuse, including the name of the suspected abuser. 1975 Code of Alabama §§ 26–14–3, 26–14–5 (1992).

8. The record reveals, for example, that C.F. understood that her counselor was helping her with her "problems" and that should her problems reoccur she could visit with her counselor again.

9. In applying Rule 803(4), the court in *United States v. George*, 960 F.2d 97, 100 (9th Cir.1992), indicated that, "As a general matter, the age of the child and her other personal characteristics go to the weight of he hearsay statements rather than to their admissibility."

allowed to testify under Rule 803(4) to statements made by eleven-year-old victim), *cert. denied*, 484 U.S. 1068, 108 S.Ct. 1033, 98 L.Ed.2d 997 (1988); *DeNoyer*, 811 F.2d at 436 (social workers allowed to testify under 803(4) to statements made by a five-year-old victim); *Renville*, 779 F.2d at 436–39 (physician allowed to testify under Rule 803(4) to statements made by eleven-year-old victim); *Iron Shell*, 633 F.2d at 82–85 (physician allowed to testify under Rule 803(4) to statements made by nine-year-old victim); *United States v. Nick*, 604 F.2d 1199, 1201–1202 (9th Cir.1979) (physician allowed to testify under Rule 803(4) to statements made by three-year-old victim).[10]

### B.

 There are alternative reasons not to find error in the decision of the bankruptcy court. First, the copy of the state-court record in which Moore was held to be liable to C.F. for sexual abuse was admitted into evidence before the bankruptcy court.[11] This record, by itself, provided a sufficient evidentiary basis for the bankruptcy court's decision that Moore had abused C.F. The bankruptcy court's admission of C.F.'s out-of-court statement identifying Moore as her sexual abuser was therefore superfluous.

 Second, the issue before the bankruptcy court was not whether Moore had sexually abused C.F. but rather whether his conduct was "willful and malicious." 11 U.S.C.A. § 523(a)(6). The state court had already found that Moore was liable for sexual abuse of a minor—that is, had already resolved the issue of fault and identity. Issue preclusion, therefore, prevents from Moore from relitigating liability. *Grogan v. Garner*, 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991) ("Virtually every court of appeals has concluded that collateral estoppel is applicable in discharge exception proceedings); *In re Halpern*, 810 F.2d 1061, 1064 (11th Cir.1987) ("bankruptcy court ... correctly concluded that collateral estoppel may be applied to foreclose relitigation of certain facts in a dischargeability proceeding"). The fact that the prior judgment was entered by default does not undermine its preclusive value. *Ex parte State of Alabama ex rel. V.E.T.P.*, —— Ala. ——, 1993 WL 325509 (Ala. August 30, 1993); *Skillman v. First State Bank of Altoona*, 341 So.2d 691 (Ala.1977).

An appropriate judgment will be entered.

---

**10.** Aside from being admissible under Rule 803(4), C.F.'s out-of-court statement was otherwise trustworthy. In *Idaho v. Wright*, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), the Supreme Court suggested some factors to weigh in determining whether out-of-court statements by a child witness in criminal abuse cases are sufficiently reliable under the confrontation clause of the sixth amendment to the United States Constitution. Although this is not a criminal case, these factors are still helpful to an analysis of whether C.F.'s out-of-court statement is trustworthy, even outside the context of Rule 803(4). These factors include, but are not limited to: the mental state of the child, whether the child lacks a motive to fabricate, the use of terminology unexpected of a child of similar age, whether the child's statement was spontaneous, whether the child was prompted to make the statement, and whether the child has been consistent. *Id.* at 821, 110 S.Ct. at 3150. These factors, on balance, support the admission of C.F.'s statement. First, C.F.'s counselor's testimony indicates that, as C.F. described her abuse, she showed the typical earmarks of guilt that accompany sexual abuse. Second, C.F. had no apparent motive to fabricate. Her allegations did not come in the context of a heated custody dispute, and Moore had been a close family acquaintance. C.F. was not antagonistic toward Moore and even indicated her willingness to continue seeing him provided he stopped touching her. Third, there is no evidence that C.F. would have had any knowledge of sexual touching or contact had she not experienced some abuse. Finally, C.F. was not prompted by any one to make her charge of sexual abuse, and her story did not change, or contradict itself, over time.

**11.** Moore objected to the admission of the state-court record on the ground that the bankruptcy court had entered an order "avoiding the judicial lien" in the state court case. Transcript of the bankruptcy court proceeding at 16. The bankruptcy court overruled this objection, *id.* at 72, and Moore has not appealed from that ruling. In any event, Moore himself later introduced the entire state-court file, except for a deposition to which he maintained an objection. *Id.* The state-court file, without the deposition, is conclusive evidence of Moore's liability to C.F. for having sexually abused her.